ADAM GORDON
United States Attorney
JORDAN B. ARAKAWA
Assistant United States Attorney
California Bar No. 294207
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-6955
Jordan.Arakawa@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO SALINAS (2),<br><br>Defendant. | Case No.: 23-cr-00618-JO<br><br>The Honorable Jinsook Ohta<br><br>**RULE 16.1 DISCLOSURE AND RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION FOR DISCOVERY AND FOR LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: May 23, 2025<br>Time: 1:30 p.m. |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, ADAM GORDON, United States Attorney, and Jordan Arakawa, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's Motion for Discovery and Leave to File Further Motions. This Response is based upon the files and records of the case, together with the below statement of facts and memorandum of points and authorities.

//

//

//

# I

# STATEMENT OF THE CASE

On April 6, 2023, Defendant Alejandro Salinas was indicted in the Southern District of California for violation of 21 U.S.C. §§ 952, 960, and 963, conspiracy to import a controlled substance, to wit, 400 grams and more of fentanyl, and 50 grams and more of methamphetamine (actual); and violation of 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to distribute 400 grams and more of fentanyl, and 50 grams and more of methamphetamine (actual). On February 21, 2025, Defendant was arraigned on the indictment and entered a plea of not guilty. (ECF No. 290.) On March 25, 2025, Defendant filed a motion to compel discovery. (ECF No. 311.) This Response follows, along with a Rule 16.1 disclosure.

# II

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. RULE 16.1 DISCLOSURE

The United States has been in contact with appointed Defense Counsel Isaac Blumberg regarding the state of discovery and timetables for continued production. Thus far, the United States has produced approximately 3722 written pages and 9 media files, including but not limited to investigator reports, custody receipts for seized property, photographs, lab results, interview videos, and other materials. This discovery was provided to Defendant on March 18, 2025, pursuant to a Protective Order. (*See* ECF No. 307.) Defendant has recently requested that the discovery be made available again, due to a download issue, which the United States will accommodate.

The United States will continue to provide additional discovery as items become available. The United States is aware of no other outstanding discovery issues at this time, and the parties will update the Court should discovery disputes arise.

## B. MOTION FOR DISCOVERY

The United States will continue to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), the Jencks Act, 18 U.S.C. § 3500 *et. seq.*, and Fed. R. Crim. P. 16. The United States has received no reciprocal discovery as of the date of this Response.

In view of the position of the United States concerning discovery stated below, the United States respectfully requests that the Court not issue any orders compelling specific discovery or preserving evidence from the United States at this time.

### 1. **<u>The Government Has Disclosed Or Will Disclose Information Subject To Disclosure Under The Federal Rules of Criminal Procedure And Evidence</u>**

a) <u>The Government Will Comply With Fed. R. Crim. P. 16(a)(1)(A) and 16(a)(1)(B)</u>

The Government has complied, and will continue to comply, with Fed. R. Crim. P. 16(a)(1)(A) and 16(a)(1)(B) by providing all of defendant's statements that are known to the United States. The United States recognizes its obligations under Rule 16(a)(1)(A) to disclose the "substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P.16(a)(1)(A). If additional reports by law enforcement agents come to light, the United States will supplement its discovery and provide those reports to Defendant.

The Government objects, however, to providing defendant with a copy of any handwritten notes of government agents summarizing oral statements made by defendant. Rule 16(a)(1)(A) does not require disclosure of such rough notes where the content of those notes has been accurately reflected in a type-written report. *See United States v. Brown*, 303 F.3d 582, 590 (5th Cir. 2002); *United States v. Coe*, 220 F.3d 573, 583 (7th Cir. 2000) (noting that Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report).

The United States also objects to requests for the production of any rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness's assertions and they have been approved or adopted by the witness. *See United States v. Alvarez*, 86 F.3d 901, 906 (9th Cir. 1996); *United States v. Bobadilla-Lopez*, 954 F.2d 519 (9th Cir. 1992). Moreover, the production of agents' notes is not required under Rule 16 because the United States has already provided, or will shortly provide, "defendant with copies of the formal interview

reports prepared therefrom." *United States v. Griffin*, 659 F.2d 932, 941 (9th Cir. 1981). Finally, the United States considers the rough notes of its agents to be work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

b) <u>The Government Will Comply With Rule 16(a)(1)(D)</u>

The United States has disclosed the information it has regarding defendant's criminal history, as contained in criminal rap sheet summaries. Should the United States receive additional information regarding the defendant's criminal history, it will disclose such records as well. *See* Fed. R. Crim. P. 16(a)(1)(D).

c) <u>The Government Will Comply With Rule 16(a)(1)(E)</u>

The United States has complied and will continue to comply with FED. R. CRIM. P. 16(a)(1)(E) in allowing defendant an opportunity, upon request and reasonable notice, to examine, photograph, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to defendant. The United States need not, however, produce rebuttal evidence in advance of trial. *See United States v. Givens*, 767 F.2d 574, 584 (9th Cir.1984).

Reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution.

d) <u>The Government Will Comply With Rule 16(a)(1)(F)</u>

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(F) in permitting defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, that are within the possession of the Government, and by the exercise of due diligence may become known to the attorney for the Government and are material to the preparation of the defense or are intended for use by the Government as evidence-in-chief.

/ /

/ /

e) The Government Will Comply With Rule 16(a)(1)(G)

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial memorandum, the Government will provide the defense with notice of any expert witnesses the testimony of whom the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence in its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications. The Government requests that the defense provide reciprocal notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

f) The Government Will Comply with Rules of Evidence 404(b) and 609

The United States will comply with its obligations under Fed. R. Evid. 404(b) and 609. Pursuant to those rules, the United States will provide defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. *See* Fed. R. Evid. 404(b), Advisory Committee's Note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supersede other rules of admissibility or disclosure[.]"). The United States understands that its obligations under Rule 404(b) extend to TECS records. *See United States v. Vega*, 188 F.3d 1150, 1154–55 (9th Cir. 1999).

**2. The Government Will Comply with Its Obligations Under *Brady v. Maryland* and *Giglio v. United States***

The United States has complied, and will continue to comply, with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). Under *Brady*, the United States must disclose material exculpatory information or evidence favorable to the defendant when such evidence is material to guilt or punishment. However, the United States does not need to disclose "every bit of information that might affect the jury's decision." *United States v. Gardner*, 611 F.2d 770, 774–75 (9th Cir. 1980). The standard for disclosure is materiality. *Id*. "Evidence is material under *Brady* only if there is a reasonable probability that the result of the proceeding would have been different

had it been disclosed to the defense." *United States v. Antonakeas*, 255 F.3d 714, 725 (9th Cir. 2001).

The United States recognizes that its obligation under *Brady* covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. *See Giglio*, 405 U.S. at 154; *see also United States v. Bagley*, 473 U.S. 667, 676-77 (1985). The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of its trial witnesses as mandated in *Napue v. Illinois*, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. *See United States v. Bernard*, 623 F.2d 551, 556 (9th Cir. 1979).

Should Defendant claim that the United States must disclose information affecting defendant's sentencing guidelines because such information is discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963), the United States respectfully disagrees. The United States is not obligated under *Brady* to furnish a defendant with information which he already knows. *See United States v. Taylor*, 802 F.2d 1108, 1118 n.5 (9th Cir.1986). *Brady* is a rule of disclosure, and therefore, there can be no violation of *Brady* if the evidence is already known to defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. *See United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on defendant's mitigation of punishment until after defendant's conviction or plea of guilty and prior to his sentencing date. *See United States v. Juvenile Male*, 864 F.2d 641, 647 (9th Cir.1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value.").

/ /

**3. <u>Discovery Regarding Government Witnesses</u>**

a) <u>Agreements</u>

The Government will disclose the terms of any agreements by Government agents, employees, or attorneys with witnesses that testify at trial. Such information will be provided at or before the time of the filing of the Government's trial memorandum.

b) <u>Bias or Prejudice</u>

As discussed above, the United States will comply with its obligations to disclose impeachment evidence under *Giglio v. United States*, 405 U.S. 150 (1972). The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of its trial witnesses as mandated in *Napue v. Illinois*, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. *See United States v. Bernard*, 623 F.2d 551, 556 (9th Cir. 1979).

c) <u>Criminal Investigations</u>

The United States objects to any overbroad requests for evidence of criminal investigations by federal, state, or local authorities into prospective Government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles defendant to any and all evidence that a prospective Government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within the possession, custody or control of the prosecution team in this matter. *See United States v. Gatto*, 763 F.2d 1040, 1048 (9th Cir. 1985); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987) (holding the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); *cf. Beaver v. United States*, 351 F.2d 507 (9th Cir.1965) (Jencks Act refers

to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information—if any exists—related to the bias, prejudice or other motivation of its trial witnesses, as mandated in *Napue v. Illinois*, 360 U.S. 264 (1959), when it files its trial memorandum.

d) Ability to Perceive, Recollect, Communicate, etc.

The Government will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

e) Witness Names and Addresses

The United States has already provided the defendant with reports that contain the names of agents involved in this case. Although not required in non-capital cases, in its trial memorandum, the United States will provide the defendant with a list of all witnesses whom it intends to call in its case-in-chief. While the United States will agree to disclose a list of its witnesses in its trial memorandum, it objects to the disclosure of witnesses' addresses. *United States v. Paseur*, 501 F.2d 966, 972 (9th Cir. 1974) ("A defendant is not entitled as a matter of right to the name and address of any witness."); *see also United States v. Armstrong*, 621 F.2d 951, 1954 (9th Cir. 1980); *United States v. Jones*, 612 F.2d 453 (9th Cir. 1979) (holding no right to pretrial disclosure of the identity of Government witnesses).

f) Witnesses Not to Be Called

The Government is not required to disclose all evidence it has or to make an accounting to defendant of the investigative work it has performed. *See Moore v. Illinois*, 408 U.S. 786, 795 (1972); *United States v. Gardner*, 611 F.2d 770, 774–775 (9th Cir. 1980). The Government accordingly objects to any request by defendant for discovery concerning any individuals whom the Government does not intend to call as witnesses.

/ /

/ /

g) Favorable Witnesses

The Government has disclosed or will disclose the names of witnesses, if any, who have made favorable statements concerning defendant which meet the requirements of *Brady*.

h) Henthorn Material

The United States will continue to comply with *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. *See United States v. Booth*, 309 F.3d 566, 574 (9th Cir. 2002). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted ex parte to the Court for an in camera inspection and review. To the extent that defendant requests that the specific prosecutor in this case review the personnel files, that request is unwarranted and unnecessary. *Henthorn* expressly provides that it is the "government," not the prosecutor, which must review the personnel files. *Henthorn*, 931 F.2d at 30–31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes any request for an order that the prosecutor personally review the personnel files.

i) Statements Relevant to the Defense

The United States will comply with all of its discovery obligations. The Ninth Circuit's decision in *United States v. Bailleaux*, 685 F.2d 1105 (9th Cir. 1982), applies to a "statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert." *Id*. at 1114 (emphasis added).

j) Jencks Act Material

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the

witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. *See* 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the Government agent correctly understood what the witness said. *See United States v. Boshell*, 952 F.2d 1101, 1105 (9th Cir. 1991). In addition, rough notes by a Government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." *United States v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the statements testifies on direct examination. *See United States v. Robertson*, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under *Brady*) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. *See United States v. Bernard*, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, although the United States anticipates providing most, if not all, Jencks material well in advance of trial, it reserves the right to withhold Jencks statements of any particular witness it deems necessary until after the witness testifies.

k) Informants and Cooperating Witnesses

Disclosure of an informant's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. *See Roviaro v. United States*, 353 U.S. 52, 60-61 (1957). There is no automatic right to pretrial discovery of information regarding informants and prospective government witnesses. *See United States v. Jones*, 612 F.2d 453 (9th Cir. 1979).

## C. MOTION FOR LEAVE TO FILE FURTHER MOTIONS

The United States does not object to the granting of leave to file further motions, so long as the subsequent motions are based only on newly discovered evidence.

**III**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that, except where unopposed, Defendant's Motion be denied.

DATED: May 16, 2025

Respectfully submitted,

ADAM GORDON
United States Attorney

*/s/ Jordan Arakawa*

JORDAN ARAKAWA
Assistant U.S. Attorney